[PHILADELPHIA, DECEMBER 31, 1836.]

## ⸎ M‘DOWELL *against* SHOTWELL and others.

### IN ERROR.

1. The terms " necessary *tools* of a tradesman" in the act of assembly, which exempts certain articles from distress for rent, &c. are not to be restricted to those implements which are taken into the hands of the tradesman, but, *it seems,* extend to all those articles, without which a man cannot work at his trade.
2. A weaver's loom is comprised within the " necessary tools of a tradesman," and, as such, exempt from distress, under the act of 10th April, 1828.
3. It is error to leave to a jury as a question of fact, whether a loom is one of the necessary tools of a weaver.
4. Where a matter of evidence is partly written and partly parol, it must all go to the jury, for their decision.
5. *It seems* that trespass will lie against a landlord who distrains for rent *arrere,* articles that are privileged from distress.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action of trespass, *vi et armis,* brought in that court, by Andrew M‘Dowell against Edmund Shotwell, Peter Albright and George Hoffner, to recover damages for seizing and carrying away the goods of the plaintiff.

On the trial below, the plaintiff proved, that on the 26th of October, 1832, the defendants seized and carried away from his house, which he had rented of Shotwell, and where he carried on his trade of a weaver, three looms and four shuttles, one wheel and swift, and five pieces of domestic cloth, which had just been woven : that the said goods were seized for $24 rent, alleged to be due by the plaintiff to Shotwell on the 28th of July, 1832. The plaintiff then produced the receipts of his landlord, showing that the amount of rent actually due at the time of the seizure was only $19 ; which was admitted to be the case. He also proved, that after the seizure, and before the removal of the goods from the premises, he gave a written notice to Shotwell, the landlord, cautioning him not to remove the same, which notice was as follows :—

" Sir :—Take notice, that the property you have distrained on for rent, belonging to Andrew M‘Dowell, is exempted, by law, from

seizure, and if you remove the same, you will be held responsible, as well as the officer, for the trespass.

Oct. 26, 1832."

The defendants, notwithstanding, removed the said goods, and, subsequently, on the 7th of November, 1832, sold them at public sale. The plaintiff then further proved, that before the seizure, he underlet one of the rooms in the house to one James Young, with the privilege of putting up and working a loom in the cellar, and who then actually occupied the same; that Young owned, and had upon the premises two looms, one worth about $5, and the other about $2, and some household furniture and bedding, of the value of $10. It was also proved that M'Dowell, the plaintiff, had upon the premises three looms with shuttles, and one wheel and swift, altogether of the value of $15, five pieces of domestic cloth, just woven, belonging to his employers, and sundry household furniture and bedding, of the value of $15 25. Of the property thus seized, one loom and shuttle belonged to Young, the undertenant, and the remainder belonged to the plaintiff, excepting the five pieces of domestic cloth, which belonged to the manufacturers who employed the plaintiff, and who furnished the raw material, which was woven by the plaintiff into the cloth upon the premises in question. The defendants left on the premises two looms, with shuttles, one belonging to Young and the other to the plaintiff, of the value of about $5, each, and all their household furniture and bedding before mentioned.

The defendants justified the taking for rent in arrear, &c.

The plaintiff then requested the court to charge the jury as follows:—

1. That if the landlord distrained for more rent than was due at the time of the distress, he is a trespasser.

2. That if the three looms belonging to the plaintiff did not exceed in value $20, they were exempted by law from distress, and the defendants were trespassers in taking them.

3. That if the tenant had at the time of the distress a qualified property in part, and an absolute property in the remainder of the good distrained on, the notice given to the landlord does not preclude him from showing his qualified interest in the same.

But the court (PETTIT President,) charged the jury in substance as follows:

" 1. That the defendants were not trespassers in distraining for more rent than was due at the time of the distress if the distress

(M'Dowell v. Shotwell.)

made did not meet the amount of rent that was actually due; and the error as to the amount of the bill for rent was, as it is here admitted to have been, unintentional.

2. The second point as put by the plaintiff's counsel is not the law. It is a question of fact for the jury to say in the first place whether the looms are tools or not. If they are not tools they are are not protected from distress. I should think, however, they were tools within the meaning of the law, as they are the things a weaver works with. This is still a matter for the jury. The law says however, *necessary* tools. The landlord is bound to leave all the tools of a tradesman not exceeding in value $20, if they are all necessary. If tools to the value of $5, or any less sum are enough, it is all the law requires to be left; and the jury are to judge. And the landlord can seize the goods of an undertenant where they do not exceed the amount exempted from distress, provided he leaves to the tenant the amount the act of assembly requires to be left, without leaving to each the amount that is exempted from seizure.

3. The third point exactly as stated does not arise in the cause. The plaintiff has given a written notice in which he speaks of the goods distrained on as belonging to him. Now, I say the tenant might have waived any right he had to protect the goods in question. If by the notice he did so waive that right; if he did by that notice or any thing else induce the landlord to consider and treat the property as entitled to no legal exemption, so far as the tenant was concerned, he cannot now gainsay his own conduct, and is barred from alleging that the cloth was not his. It is left to the jury as a matter of fact whether he did so act or not."

The plaintiff's counsel excepted to this charge, and the jury having found for the defendants, the plaintiff removed the record to this Court, and specified the following errors:

" 1. Because the Court refused to charge the jury that if the landlord distrained for more rent than was due at the time of the distress, he is a trespasser.

2. Because the court refused to charge the jury that if the three looms belonging to the plaintiff did not exceed in value $20, they were exempted by law from distress, and the defendants were trespassers in taking them; and they erred in leaving it to the jury to say whether the looms distrained on were tools or not.

3. Because the court did not answer the fifth point (last above stated,) that was propounded to them, and so far as the same is answered, the answer is erroneous.

4. Because the Court erred in leaving to the jury as a matter of fact, whether the plaintiff had waived any right to protect the goods

(M'Dowell *v.* Shotwell.)

that were distrained on, by giving the written notice to the land-lord."

Mr. *Isaac Norris* for the plaintiff in error, contended,

1. That trespass will lie against a landlord who distrains for more rent than is due. He cited upon this point the act of 21st March, 1772, § 3; *O'Donnel* v. *Seybert*, (13 *Serg. & Rawle*, 57). *Brown* v. *Sims*, (17 *Serg. & Rawle*, 138). *Kerr* v. *Sharp*, (14 *Serg. & Rawle*, 402.)

2. That *looms* used for weaving were *tools* of a tradesman, within the act of 10th April, 1828; which he contended ought to receive a liberal exposition. In *Comyn's Law of Landlord and Tenant*, (book iv. c. 1, p. 390,) looms are included among the implements of trade, which are privileged *sub modo*. The same law is laid down in *Comyn's Digest*, title *Distress*. In *Patton* v. *Smith*, (4 *Conn. Rep.* 450,) printing presses, and the other apparatus for printing were held to be tools, within the meaning of the statute of Connec-ticut. So of implements of husbandry in Massachusetts. *Daily* v. *May*, (5 *Mass. Rep.* 313). In *Buckingham* v. *Bailey*, (13 *Mass. Rep.* 82,) it did not appear that the articles taken were *necessary* for the business of the tradesman. Here, it is true that there were two looms, and it is argued on the other side that the requisition of the law was complied with, as more could not be deemed necessary; but this construction would prevent the artificer from employing his children or journeymen for the necessary support of his family. In the case of a carpenter it would not be contended that if a single implement of each kind were left in his possession, the design of the law would be satisfied. In *Howard* v. *Williams*, (2 *Pickering*, 80,) it was decided that the exemption extends to tools used by a jour-neyman. The Court ought not to have left to the jury, as a question of fact, whether these were necessary tools, since it is important that the act should receive an uniform construction.

Mr. *Kennedy* and Mr. *Nayler* for the defendants in error, said that the question whether the articles taken were necessary to the plaintiff, was properly left to the jury as a matter of fact, and at all events that trespass would not lie in this case. They cited *Bradby on Distresses*, p. 266.

The opinion of the Court was delivered by

HUSTON, J.—This was an action of trespass against Shotwell the landlord, and the others, constables, for taking what was alleged to be an illegal distress.

M'Dowell is by trade a weaver, and had three looms, one wheel and swift, and four shuttles; and on the same premises was Young, an undertenant, who had two looms, one of which was taken; two

(M'Dowell *v*. Shotwell.)

of M'Dowell's looms, four shuttles, and the wheel and swift were taken. M'Dowell received yarn to weave from others; and there were on the premises five pieces of domestic cloth, woven, and not taken away by the owners; these were also distrained. Before the goods were removed, M'Dowell gave to Shotwell a notice as follows:

Sir,—Take notice that the property you have distrained on for rent, belonging to Andrew M'Dowell, is exempted by law from seizure, and if you remove the same you will be held responsible, as well as the officers for the trespass.

Oct. 26, 1832.

It was proved that the three looms of M'Dowell, and wheel, swifts, and shuttles were worth $15, and his household furniture worth $15 25; Young's two looms were worth, one of them $5, which one was left; the other worth $2 was taken. Young's personal property was worth $10.

The defendants justified the taking for $19, part of a quarter's rent in arrear. The property taken, without the cloth belonging to the persons who had furnished the yarn, did not pay the rent due. The owners of these pieces of cloth claimed them before the sale; but the landlord ordered them to be sold, and they were sold.

M'Dowell had at the time two journeymen employed working at the two looms which were taken, and one of them had an unfinished piece of cloth in it.

The plaintiff requested the Court to charge on three several propositions. The first is not material.

2. That if the three looms belonging to the plaintiff did not exceed in value $20, they were exempted by law from distress, and the defendants were trespassers.

3. If the tenant had at the time a qualified property in part, and an absolute property in the remainder of the goods distrained on, the notice given to the landlord does not preclude him from showing his qualified interest in the same.

The Court charged on these points as follows:

(Here the judge stated the substance of the charge of the Court upon the second of the above points, which has been already given.)

The question on this point does not seem to have been decided in this state, but the term *tools* has received a construction, when used in acts similar in some particulars to our law. By the law of Massachusetts, the tools of any debtor necessary for his trade or occupation, are exempted from attachment or execution; and household property to the value of $50.

(M'Dowell v. Shotwell.)

In Connecticut, necessary apparel, bedding, tools, arms and implements of his household necessary for upholding life, are exempted.

By an act of assembly of this state, the following goods owned by, or in the possession of any debtor, are exempted from levy and sale on any execution or distress for rent, viz. " household utensils not exceeding in value $20 ; the necessary tools of a tradesman, not exceeding in value $20; all wearing apparel; two beds, and the necessary bedding ; one cow, two hogs, six sheep and the wool thereof, and the yarn and cloth manufactured therefrom ; food for said cow, hogs and sheep, from the 1st of November till the 1st of May ; a stove, pipe, and necessary fuel; a spinning wheel and reel; any quantity of meat not exceeding one hundred pounds; six bushels of potatoes ; six bushels of grain, and the meal made therefrom ; ten pounds of flax and the thread or linen made therefrom ; and all bibles and school books for the use of the family."

In one case in Massachusetts, the court seemed inclined to confine the word *tools* to such as were used in the hand, and not to include a printing press ; but the cause went off on another point ; the officer left one printing press, types, &c. of value of sixteen hundred dollars, and this was considered as satisfying the expression " the tools of any debtor necessary for his trade."    In 2d *Pickering*, 80, it is said, that the exemption is not limited to the tools used by the tradesman with his own hands, but comprises such, in character and amount, as are necessary to enable him to prosecute his appropriate business in a convenient and usual manner.    It would be too narrow a construction of a humane and beneficial statute, to deny a tradesman, whose occupation can hardly be prosecuted at all, much less to any profitable account, without assistants, as journeymen and apprentices, the necessary means of their employment.    In 4th *Connecticut Reports*, 450, a printing press and types, in value about $500, were considered necessary. Without undertaking to lay down and specify what, in every instance, may be comprised in the terms, " necessary tools of a tradesman," we may say, that, generally, those articles, without which, a man cannot work at his trade, must be within the meaning of the act.    This will embrace the anvil of a smith, the wheel of a turner, and the loom of a weaver, &c.    The several trades cannot be carried on without them, though neither of them is taken into the hand of the tradesman.    In 4th *Term Reports*, a stocking loom was considered as within the common law protection of the implements of a tradesman.

It is the opinion of this court, that the judge ought to have told the jury, a loom was exempted from distress by the act of assembly of this state.

In those states, where the tools necessary for a trade are exempted, without any limitation as to their value, it has been and must be left to a jury to say whether they are necessary for his trade. For myself, I incline to think, if the articles are such, as that the trade cannot be exercised without them, and if they have been and are intended by the debtor to be used by himself and journeymen, or apprentices, and do not exceed in value $20; they are exempted in this state. A tradesman may have tools or implements of his trade for sale, and not intended for use by himself, or those in his employment; these, I would say, are not exempted; but by the very words of the act, the tools of trade in actual use daily at the time of distress, if not exceeding $20, are exempted; and in such a case to leave it to a jury to say whether they were necessary, would seem useless—a jury must decide whether within the value—but if daily used, and of such kind that the trade cannot be exercised without them, and they do not amount in value above $25, they are exempted, though some, or even most of them, are used by journeymen.

The third error assigned is, that the judge left it to the jury to decide, whether the plaintiff, in the notice above recited, did not mislead the defendant, by inducing a belief that the plaintiff only objected to the landlord taking "the property distrained on for rent, belonging to Andrew M'Dowell."

Although not copied into our paper books, yet the record shows that other notice than the written one was given, and that express notice by parol was given, that the cloth belonged to others, for whom M'Dowell had woven it, from yarn furnished by those others; and where a matter of evidence is partly written and partly parol, all must go to the jury. Perhaps it was not necessary that M'Dowell should have given any notice.

In Comyn's Treatise on *Landlord and Tenant,* it is laid down in page 491, that the tenant, before they are impounded, may rescue goods distrained on, which are not distrainable by common or by statute law, and specified among the things protected for the sake of trade; and *Co. Litt.* 160, *b.* says so. I would not willingly deprive a poor tenant of a right, because he wrote a notice where none was necessary, or because it was couched in ambiguous language. To be sure, if the notice is such, that it must, necessarily, or may, naturally, mislead a landlord, it may affect the extent of the tenant's right of recovering, beyond the matters notified; but if it requires a lawyer to give a technical meaning to make the difficulty, it would not be much wrong to give the words the meaning a common person would affix to them. The tenant has a special property in goods left in his possession in the way of trade; he may rescue them when illegally taken; but as the testimony discloses other notice besides the written, it was not error to submit it all to the jury.

(M'Dowell *v.* Shotwell.)

There was some discussion of the question whether·trespass was the proper action; the suit is brought for illegally taking the goods; not for taking them legally and detaining them unlawfully; but this question does not arise on the record before us. The intimation of opinion by the court on this matter is not assigned for error—perhaps it is not error.

Judgment reversed, and a *venire de novo* awarded.